## Millard, Appellant, *v.* Delaware, Lackawanna & Western Railroad Company.

*Payment—Voluntary payment—Mistakes—Taxes on coal severed from surface.*

In an action by the owner of the surface who had severed his title to the coal underneath by an indenture called a coal lease, to recover from the owner of the coal the amount of several years of taxes on the coal which the plaintiff alleged had been assessed against him, and had been paid by him in mistake, an affidavit of defense is sufficient to prevent judgment, which indicates that the taxes were paid under a mistake of law and not under a mistake of fact.

Argued Feb. 23, 1909. Appeal, No. 388, Jan. T., 1909, by plaintiffs, from order of C. P. Lackawanna Co., March T. 1908, No. 1,016, discharging rule for judgment for want of a sufficient affidavit of defense in case of Stephen C. Millard, Executor of the Estate of Abel Bennett et al., v. The Delaware, Lackawanna & Western Railroad Company. Before FELL, BROWN, POTTER, ELKIN and STEWART, JJ. Affirmed.

Assumpsit to recover taxes alleged to have been made by mistake.

Rule for judgment for want of a sufficient affidavit of defense.

NEWCOMB, J., filed the following opinion:

The equities here are apparently with the plaintiffs. But on the question of their legal right to recover the case is close. If the exact facts were before us on a case stated it could be determined at this time.

The plaintiffs, or those whom they represent, were owners in fee of a tract of seated land in this city. Many years ago title to all the coal therein minable at an agreed standard of profit was severed by their indenture called a "coal lease" and became vested in the defendant. The term of the lease was during such time as should be required to exhaust the coal at the stipulated rate of production. The lessee went into possession accordingly, has been in possession of the demised premises ever since, and the lease is still operative. As owner it thus became personally liable to assessment thereafter for the tax on the unmined coal to which it took title. How the taxes were assessed during the earlier years does not appear. From 1902 to 1906, inclusive, they were assessed against the lessors and paid without compulsion by the plaintiffs as their representatives. No actual notice of the assessment was brought home to defendant, nor was it requested to pay the taxes.

The sole question, it is believed, is whether there is enough on the present showing to take the case out of the general rule as to voluntary payments. That was the only question discussed at the argument, although by a brief submitted in the meantime another one is sought to be raised by defendant. It takes the ground that the lease is capable of being construed as implying an agreement on the part of the lessors to pay the taxes, and that the continuous payment by them from the start shows such construction by the parties, thereby determining its construction by the court.

This position is believed to be untenable. In the first place it nowhere distinctly appears that the taxes were so paid from the start. In the second place the conduct of the parties is never resorted to for such purpose except where the terms of their written contract are ambiguous. In this instance there is no ambiguity. So far as they undertook to say anything in

the paper on the subject of taxes their meaning was expressed clearly and without uncertainty. With any supposed uncertainty of intention about things as to which they did not attempt to have the writing speak its construction has nothing to do. It is the meaning of the terms employed, not those omitted, which, if uncertain, may be inferred from the conduct of the parties to the writing.

But, while the defendant's contention in this particular is not well founded, it suggests the crucial point in this case as it is now presented.

The plaintiffs aver payment by mistake of that which defendant of right ought to have paid, and thus invoke the equitable principle of unjust enrichment. The averments are that the taxes on the coal estate were assessed against the lessors by mistake of the taxing officers, and by them paid on the mistaken assumption that the assessment was on such estate as they still had in the demised premises. Upon this it is urged that the payment cannot be regarded as intrusive because it is presumed to have been in relief of plaintiffs' interest, an estate in the nature of a reversion after the exhaustion of all veins minable at the standard of profit defined in the lease. Other than the assertion in the first affidavit of defense that the payment was in conformity with the terms of the lease, the averment of mistake is only formally denied. As this is an essential averment, it may be questioned whether it is fairly controverted by a mere naked denial amounting to no more than the affiant's conclusion. Be that as it may, when it is considered that so far as concerns the legal liability to assessment the status of the parties was fixed by the character of the lease, together with the subject-matter of the payments, the quantity of the coal and the amount of the taxes as assessed from year to year, coupled with plaintiffs' failure to make demand on the defendant, or seek to have the assessment transferred, the question inevitably arises: "Was not the mistake merely one of law?" In other words, on the whole case as now presented the plaintiffs fail to make it clear that the payments were made otherwise than in ignorance of the effect of the lease as fixing the defendant's liability. So,

while it is apparent that there was no stipulation, either expressed or implied, on the part of the lessors to pay these taxes, it is doubtful whether they did not pay them because they assumed they were legally liable in the absence of an agreement to the contrary. If that be so, the mistake involved would be one of law and not of fact. I do not understand that a mere mistake as to a legal right or liability where one has knowledge or means of knowledge of the facts will make such payment involuntary or warrant a recovery, even though it be against conscience for the defendant to retain its benefit: Keener on Quasi Contracts, 85–112; Real Estate Sav. Inst. v. Linder et ux., 74 Pa. 371; Gould v. McFall, 118 Pa. 455.

The learned counsel for the plaintiffs relies upon the doctrine of Iron City Tool Works v. Long & Co., 4 Sad. 57, and kindred cases. But there the mistake was one of fact and was so found by a jury. In Hogg v. Longstreth, 97 Pa. 255, the taxes had been assessed against the defendant personally while in possession as owner. The land was subject to a mortgage which was afterwards foreclosed against the mortgagor and the defendant as terre-tenant. Becoming the purchaser at the foreclosure sale, plaintiff went into possession and was then compelled to pay defendant's taxes in part to prevent a sale of the land on tax liens, which had been put in judgment, and the balance to save his personal property from seizure by the tax collector. Manifestly these facts repelled any inference of a voluntary payment. So here, if the assessments had been against the defendant and the plaintiffs had paid the taxes to prevent a sale after defendant's refusal to pay, a different question would be presented. But having paid the taxes repeatedly without compulsion or question as to who ought to pay them, the plaintiffs' right to recover as for an involuntary payment is not free from doubt on this motion. To doubt in such case is to decide in favor of its submission to a jury.

The rule for judgment is discharged.

*Error assigned* was order discharging rule for judgment for want of a sufficient affidavit of defense.

*John S. Harding*, with him *W. J. Torrey*, for appellants.

*Everett Warren,* of *Willard, Warren & Knapp,* with him *D. R. Reese,* for appellee.

PER CURIAM, April 12, 1909:

The order discharging the rule for judgment is fully sustained by the reasons stated in the opinion of the learned judge of the common pleas, and it is now affirmed.